UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **PHILLIP TURNER** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **CIVIL ACTION NO. 16-cv-1134** |
| **OFFICER SHURLEY BADGE NO. 4895,** | § | |
| **OFFICER SMITH BADGE NO. 6981,** | § | |
| **OFFICER ROEDIGER BADGE NO. 6173,** | § | |
| **and OFFICER TRIPP BADGE NO. 4765,** | § | |
| **Defendants** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Phillip Turner ["Mr. Turner"], complaining of Defendants, Officer Shurley, Officer Smith, Officer Roediger, and Officer Tripp, hereby files *Plaintiff's Original Complaint and Jury Demand* and respectfully shows the following:

### I.  NATURE OF THE ACTION

1. This is a civil rights action arising under the Constitution of the United States and under the laws of the United States. Mr. Turner was lawfully exercising his First Amendment rights under the Constitution by using his video camera to peacefully observe and videotape the Austin Police Department North Substation and the activity at the station from a bench provided for public use outside the Sonic Drive-In restaurant adjacent to the station in daylight hours and in plain view, without interfering with traffic or with any activities of Austin Police Department North Substation. This was not a crime. Nonetheless, Defendants treated Mr. Turner as if it were. Defendant Officers harassed, detained, and arrested (by handcuffing) Mr. Turner—without reasonable suspicion or probable cause—merely because Mr. Turner was lawfully using his

1

video camera to observe and record the Austin Police Department North Substation building and activities thereat.

## II.     DEMAND FOR JURY TRIAL

2. Plaintiff demands a trial by jury.

## III.     PARTIES

3. Mr. Turner is a male adult citizen and resident of Texas, U.S.A.

4. Defendant Officer Shurley, Badge No. 4895, is a male adult resident of Texas and at all relevant times was employed by the Austin Police Department as a Police Officer. He is sued in his individual capacity and can be served with Summons at the Austin Police Department Headquarters, 715 E 8th St., Austin, Texas 78701.

5. Defendant Officer Smith, Badge No. 6981, is a male adult resident of Texas and at all relevant times was employed by the Austin Police Department as a Police Officer. He is sued in his individual capacity and can be served with Summons at the Austin Police Department Headquarters, 715 E 8th St., Austin, Texas 78701.

6. Defendant Officer Roediger, Badge No. 6173, is a male adult resident of Texas and at all relevant times was employed by the Austin Police Department as a Police Officer. He is sued in his individual capacity and can be served with Summons at the Austin Police Department Headquarters, 715 E 8th St., Austin, Texas 78701.

7. Defendant Officer Tripp, Badge No. 4765, is a male adult resident of Texas and at all relevant times was employed by the Austin Police Department as a Police Officer. He is sued in his individual capacity and can be served with Summons at the Austin Police Department Headquarters, 715 E 8th St., Austin, Texas 78701.

## IV. JURISDICTION

8. This action to vindicate Plaintiff's rights protected by the First, Fourth and Fourteenth Amendments to the U.S. Constitution is brought under 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343(a) (3) and (4).

## V. VENUE

9. Venue is proper under 28 U.S.C. § 1391(b) because one or more Defendants reside in the Western District of Texas.

10. Venue is also proper under 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to the claims occurred in the Western District of Texas.

## VI. FACTS

### A. INTRODUCTION

11. At the time of the events in question, Mr. Turner was employed part-time and was a part-time student. Photography and videography were (and still are) hobbies of Mr. Turner, including photographing public activities of police for the public's viewing on his website.

12. Mr. Turner decided to videotape the activity at the Austin Police Department North Substation located at 12425 Lamplight Village Ave, Austin, TX 78758.

13. On June 9, 2015 during midday, Mr. Turner—wearing only a T – shirt, shorts, and gym shoes due to the heat—was sitting on a bench designated for public use outside the Sonic Drive-In restaurant adjacent to the Austin Police Department North Substation located at 12425 Lamplight Village Ave, Austin, TX 78758. Mr. Turner's only activity at the time was videotaping the station and the activity at the station.

14. Mr. Turner was not violating any laws and was not acting suspiciously or furtively.

15. He was not armed and was only carrying a video camera.

16. He was not interfering with any activities of the police or with traffic.

17. He was not threatening anyone, by neither word nor action, and was not endangering anyone in any manner.

18. Austin Police Department "Policy Manual (effective 1-1-2015)" Section 302.2 "Interaction With Community" includes the following: (a) "Officers are reminded that photography, including **videotaping**, of places, buildings, structures and events are **common and normally lawful activities**."

19. The "Policy Manual" Section 302.2 (a) states further in paragraph (a) 1. that "If a person is taking photographs or recording from a place where he or she has a right to be, officers are reminded that this activity by itself does not constitute suspicious conduct."

B. **ILLEGAL DETENTION AND ARREST BY HANDCUFFING AND PLACING IN POLICE CAR**

20. Upon information and belief, none of the Defendants knew Mr. Turner or had any information about him other than what they could see at the time.

21. Defendant Officers walked up to Mr. Turner and one said "Sir How are you?" Mr. Turner kept filming and did not respond.

22. Officer Tripp introduced himself and Officer Smith, who then asked Mr. Turner "How's it going?" Mr. Turner did not respond.

23. Officer Tripp then said "what's going on today?" Mr. Turner kept filming and did not respond.

24. One of the officers then said "Can you talk or just don't want to talk?"

25. Mr. Turner did not immediately respond; then one of the Officers said: "the reason we're out on you because you caused a kind of a scare up here, so we are trying to figure out what's going on. So you are videotaping for a reason or what's going on?"

26. Again Mr. Turner did not immediately reply. The Officer then asked Mr. Turner "you just don't want to talk at all or you just want to videotape? Videotaping us is fine, we just trying to figure out what's going on. We don't have this happen every day. So…" When Mr. Turner still did not answer, one of the officers stated "Okay let's go ahead and ID this, gentlemen. Do you have an ID on you at all?"

27. Mr. Turner did not say anything. The officer then said to Mr. Turner "Sir, listen. We are trying to cooperate with you, Okay? But you gotta cooperate with us. You can videotape all you want, but, you're being suspicious right now. We're trying to figure out what's going on. So, if you have ID with you that would be fine. We'd love for you to give it to us, so we can find out what's going on."

28. Then Mr. Turner asked "Am I doing anything illegal?"

29. One office replied "Yes, based on uh."

30. Mr. Turner replied "What's, what am I doing that's illegal?"

31. The same officer replied, "Nothing illegal but based on your suspicious activity, we're going go ahead and ID you. If you have no warrants or anything like that, we're going go ahead and we wish you a good day and we're going be on our way."

32. Mr. Turner asked "Am I under arrest?"

33. "No, you are not under arrest. But you are being detained. There is no two ways about it." the Officer answered.

34.     Mr. Turner responded "Alright well if I'm being detained, you can go ahead and do your investigation, but I'm just going to go ahead and sit here and exercise my Fifth Amendment right. Just sit here and if I am not doing anything wrong, then then there's no reason for you to be here."

35.     The Officer said "We are going to go ahead and ID you one way or the other. It's up to you."

36.     Mr. Turner asked "What do you mean by one way or the other?"

37.     The Office responded "One way or another, if we have to take you downtown to fingerprint you. We'll do that. You're being detained for investigative purposes right now. Believe I know the law better than you. So you can film all you want, you can set it up however you want. We are gonna ID you. But until we do that, you're not free to go."

38.     Mr. Turner responded that "Texas is not a stop and ID state, is it?"

39.     The Officer said "Guys, go ahead and frisk this gentleman, make sure he doesn't have any weapons on him."

40.     Mr. Turner said "I have no weapons and I do not consent to searches."

41.     The officer continued "go ahead and frisk him like I said, make sure he has no weapons on him."

42.     Mr. Turner said again "I don't consent to searches."

43.     One of the Officers then said "He can either provide us his information willingly, or we can do it through the ID section downtown."

44.     Mr. Turner asked "under what gives you the authority you do that? "

45.     One of the officers then told Mr. Turner "Go ahead and stand up for me."

46.     Mr. Turner said "You are violating my Fourth Amendment. You know that, right?"

47.     One of the officers told Mr. Turner to stand up again.

48.     One Officer said "You do what you need to do; we'll do what we need to do buddy."

49.     Another officer then asked "Do you have anything on you that we need to know about, knives, guns, weapons…?"

50.     Mr. Turned answered "I have nothing. I just told you about that."

51.     The Officer ordered Mr. Turner "Put your hands back behind you. You can put the camera behind you and film us while we are doing this if you want to."

52.     Mr. Turner asked "Am I under arrest? That's what I'm asking."

53.     The Office replied "You're being detained and during the detention, you can be frisked for safety."

54.     An officer then said "If he won't put it down, handcuff him."

55.     Phillip said "Here, I'll put my hands here, is that fine—putting his hands down on the picnic table in front of him where he had been sitting?"

56.     An officer again said "If he won't do it, handcuff him."

57.     The officers insisted that Phillip Turner put his hands behind his back; after he did, they handcuffed him, searched him, and demanded again that he identify himself.

58.     When Mr. Turner refused to identify himself, the officers placed him in the front seat of a police car with another Officer present, presumably to keep watch on him.

59.     The officers left Mr. Turner in the car handcuffed for about 16 minutes. During the entire event, the officers were illegally demanding that Mr. Turner identify himself.

60.     The officers effectively illegally arrested Mr. Turner by handcuffing him although Mr. Turner had never shown any signs of aggression, had never shown any signs of attempting to

7

flee, was not armed, and in no way threatened by word or action any danger to the safety of the Officers or anyone else.

61.     At all times relevant to the acts alleged in this complaint, Defendants were acting under the color of the statutes, ordinances, regulations, customs, and usages of the City of Austin and the State of Texas and under the authority of their respective offices as police officers.

62.      Prior to and after Mr. Turner was informed that he was detained, he had made no threats, had taken no aggressive actions, had not verbally threatened harm or exhibited any actions to cause the police to believe that they or any persons to were in any danger, was unarmed, and had not run away or attempted to flee the scene.

63.     Mr. Turner had to suffer the humiliation of being handcuffed in public view for everyone to see and held in custody by multiple police officers as if he were a common criminal.

64.     No actions of Mr. Turner would have provided a reasonable officer with reason to believe that the officer had reasonable suspicion to detain Mr. Turner and probable cause to arrest Mr. Turner by placing him in handcuffs in a police car.

65.      None of the Defendants had information in the form of objective articulable facts that would have allowed a reasonable officer to initially detain Mr. Turner.

66.     None of the Defendants had a warrant to arrest Mr. Turner and no reasonable officer in the position of defendants would have believed that he had probable cause to handcuff Mr. Turner and place him in a police car for all persons to see.

### VII.     ACTION AGAINST ALL DEFENDANTS INDIVIDUALLY UNDER 42 U.S.C. § 1983 FOR VIOLATONS OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS

67.     Mr. Turner adopts by reference the facts and allegations set forth in paragraphs 1- 66 as though fully set forth herein.

68. Observing and recording public police activities from public places, without interfering with the duties of the police, is a legitimate means of gathering information for public dissemination and is expressive conduct under the protection of First Amendment.

69. This First Amendment right to gather information includes the right to record actions of public officials, including the police, subject to reasonable time, place, and manner restrictions.

70. In this instance, Mr. Turner was sitting on a bench patently designated for public use adjacent to the Austin Police Department North Substation; he was videotaping the station and activities of the police in broad daylight during mid-day in public view—an activity which is protected by the First Amendment to the U. S. Constitution.

71. Mr. Turner was not engaged in any unlawful activity or interfering with the duties of the police.

72. None of Mr. Turner's activities were being conducted in an unreasonable time, place or manner.

73. The entire incident was an illegal chilling of Mr. Turner's rights under the First Amendment by the Defendant Officers and constituted retaliation for Mr. Turner's exercise of his First Amendment rights.

74. Defendants' actions in detaining, handcuffing and placing Mr. Turner in a police car caused Mr. Turner to suffer such injury that would chill a person of ordinary firmness from continuing to engage in the activity of filming the police.

75. Because the only activity Mr. Turner was engaged in was filming the police, Defendants' adverse actions were apparently substantially motivated against Mr. Turner's exercise of his constitutionally protected conduct.

76. Defendants acting under color of law deprived Mr. Turner of certain constitutionally protected rights as follows:

    a. Defendants unreasonably detained Mr. Turner and demanded to see his identification without reasonable suspicion to believe that Mr. Turner had engaged in, was engaging in, or was about to engage in any criminal conduct;

    b. Defendants unlawfully and unreasonably handcuffed Mr. Turner and placed him in a police car for all persons to see, thereby effectively arresting him without probable cause, without a warrant, without consent, and without exigent circumstances; and

    c. Defendants' actions prevented Mr. Turner from freely continuing to exercise his right to record the police station and activity thereat.

77. Defendants acted willfully, deliberately, maliciously, or with reckless disregard for Mr. Turner's exercise of his clearly established rights protected by the First Amendment, Fourth Amendment and Fourteenth Amendment to the U.S. Constitution.

78. As a direct and proximate result of the Defendants' unlawful detention and arrest, Mr. Turner sustained damages for mental anguish, and other damages as pled herein.

## VIII.   LACK OF QUALIFIED IMMUNITY

79. Mr. Turner adopts by reference the facts and allegations set forth in paragraphs 1- 78 as though fully set forth herein.

80. Defendants did not observe Mr. Turner engage in any criminal conduct and Defendants had no objective facts to form a basis for reasonable suspicion that Mr. Turner had committed, was committing, or was about to commit, any criminal conduct.

81. At all times Mr. Turner was nonviolent, was unarmed, was not making any threats to the safety of Defendants or anyone else, was not attempting to flee the scene, and was not putting or attempting to put the safety of the Officers or anyone else in danger by any means.

82. Mr. Turner was merely videotaping the police at work which was safeguarded by the First Amendment to the U.S. Constitution, a clearly established right. In addition, the right to be free from unreasonable seizure is a clearly established right under the Fourth Amendment to the Constitution.

83. Defendants' actions violated Mr. Turner's "clearly established statutory and constitutional rights of which a reasonable officer would have known."

84. Further, The City of Austin Police Department Policy Manual (adopted 2014/12/16) Section 302.2 (c) gave the Defendants clear notice that their actions were illegal:

> (c) As long as the photographing or recording takes place in a setting at which the individual has a legal right to be present and does not interfere with an officer's safety or lawful duties, officer's shall not inform or instruct people that photographing or recording of police officers, police activity or individuals who are the subject of police action (such as a Terry stop or an arrest) is not allowed; requires a permit; or requires the officer's consent. Additionally, officers shall not:
>
>     2. Demand that person's identification;
>     3. Demand that the person state a reason why he or she is taking
>        photographs or recording;
>     4. Detain that person;

85. No reasonable officer confronting a situation where the officer had not observed a person engage in any criminal conduct and had no reasonable suspicion based upon objective facts to believe that a person had committed, was committing, or was about to commit, any criminal conduct would have detained Mr. Turner.

86. Further, no reasonable officer in the position and circumstances faced by Defendants would have handcuffed Mr. Turner and placed him in a police car for all persons to see, effectively arresting him, with no probable cause, no warrant, and no exigent circumstances,

87. Therefore Defendant Officers should not be entitled to any protection of Qualified Immunity to avoid accountability in this case.

### IX.     DAMAGES AND ATTORNEY'S FEES

88. Mr. Turner adopts by reference the facts and allegations set forth in paragraphs 1- 87 as though fully set forth herein.

89. As a direct and proximate result of Defendants' unlawful actions, Mr. Turner suffered deprivations of his constitutional rights guaranteed by the First, Fourth and Fourteenth Amendments to the U. S. Constitution.

90. Mr. Turner incurred damages for loss of reputation, shame, embarrassment, humiliation, mental anguish, and such other compensatory and consequential damages as the law entitles him to recover.

91. Alternatively, Mr. Turner seeks nominal damages for violations of his Constitutional rights.

92.  Mr. Turner seeks punitive damages against the individual Defendant Officers for their intentional, willful and wanton acts violating "clearly established statutory and constitutional rights of which a reasonable officer would have known."

93. Mr. Turner hereby sues for these damages, and prays for just and fair recovery thereof.

94. Mr. Turner is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b).

### X.     PRAYER FOR RELIEF

95. For the foregoing reasons, Plaintiff respectfully requests the following:

a.  Award actual/compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial;

b.  Alternatively, award nominal damages for the violations of Plaintiff's Constitutional rights;

c.  Award punitive damages against Defendants;

d.  Enter an award for costs, expenses, and counsel fees pursuant to 42 U.S.C. § 1988(b); and

e.  Enter such other relief as this honorable Court may deem just and deserving.

DATED this 11th day of October 2016.

Respectfully submitted,

By: /s/Kervyn B. Altaffer Jr.
Kervyn B. Altaffer Jr.
State Bar No. 01116575
Altaffer & Chen PLLC
4054 McKinney Ave Ste 310
Dallas, TX 75204
Tel: 972-234-3633
Fax: 972-947-3663
Email: kervyn@altafferlaw.com